United States District Court
Southern District of Texas
**ENTERED**
January 11, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PROGRESSIVE COMMERCIAL CASUALTY INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. H-21-2683 |
| XPRESS TRANSPORT LOGISTICS, LLC, d/b/a XT LOGISTICS, XPRESS TRANSPORT LOGISTICS, VERONICA CUELLAR, individually and as personal representative of the Estate of MIGUEL ANGEL PEREZ CUELLAR, deceased, ESTATE OF FABIAN ALANIZ-SANTIAGO, deceased, and ESMERALDA SANTIAGO, | § § § § § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This declaratory judgment casualty insurance coverage case arises from sad facts. Miguel Cuellar, age 18, agreed to accompany his friend, Fabian Alaniz Santiago, age 19, who was to drive a truck load of steel parts from Laredo, Texas, to Missouri. (Docket Entry No. 13 at ¶ 3; Docket Entry No. 14 at ¶ 7). Santiago was driving for ESD Transport, a company owned by Fabian Santiago's mother, Esmeralda Santiago. (Docket Entry No. 13 at ¶ 3.1; Docket Entry No. 14 at ¶ 8). Xpress Transport Logistics, LLC, also known as XT Logistics, had agreed to haul the load but rebrokered it to ESD Transport. (Docket Entry No. 13 at ¶ 3.1; Docket Entry No. 14 at ¶ 8). At some point during the trip, Miguel Cuellar took the wheel. (Docket Entry No. 13 at ¶ 3; Docket Entry No. 14 at ¶ 7). The truck rolled, killing both him and Fabian Santiago. (Docket Entry No. 13 at ¶ 3; Docket Entry No. 14 at ¶ 7). Cuellar's mother, Veronica Cuellar has sued Esmeralda Santiago, Xpress, and other defendants in Texas state court. (Docket Entry No. 13-1).

At the time of the accident, Xpress was insured by a commercial auto policy with Progressive Commercial Casualty Insurance Company.  (Docket Entry No. 13 at ¶ 3.3; Docket Entry No. 13-2).  Under a full reservation of rights, Progressive provided Xpress a defense in the underlying state court action.  (Docket Entry No. 13 at ¶ 3.4; Docket Entry No. 14 at ¶ 11).  Settlement demands have been made in the underlying litigation, but no final judgment or order of dismissal has been entered.  (*Id.*).

Progressive has sued Xpress and Veronica Cuellar, as well as the estate of Fabian Santiago, and Esmeralda Santiago, in this court, seeking a declaratory judgment that Progressive has no duty to defend or indemnify Xpress and that the MCS-90 insurance endorsement does not apply to the claims in the underlying state action.  (Docket Entry No. 13 at 9).  Veronica Cuellar has counterclaimed for a declaratory judgment that Progressive has a duty under the MCS-90 endorsement to accept and pay a settlement offer that is reasonable and within the MCS-90 policy limits.  (Docket Entry No. 14).

Veronica Cuellar moves for partial summary judgment that as a matter of law, Miguel Cuellar was not a statutory employee of Xpress when the accident occurred, and that therefore the MCS-90 endorsement applies.  (Docket Entry No. 16).  Progressive responds to Veronica Cuellar's motion for partial summary judgment by asking for discovery to be able to frame a response.  (Docket Entry No. 20).  Veronica Cuellar has replied.  (Docket Entry No. 21).

Progressive moves to dismiss Veronica Cuellar's counterclaim on the ground that there is no cause of action for a "duty to settle" in relation to an MCS-90 endorsement.  (Docket Entry No. 17).  Veronica Cuellar has responded, and Progressive has replied.  (Docket Entry Nos. 22, 23).

The motions are addressed below.

2

## I.      The Legal Standards

### A.      The Standard for a Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co*., 920 F.3d 890, 900 (5th Cir. 2019).

### B.      The Standard for a Motion for Summary Judgment

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citations and internal quotation marks omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019) (citation and internal quotation marks omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to

4

be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

## II.   Analysis

### A.   The Statutory Employee Issue

Although fact disputes remain unresolved at this early stage of the litigation, Veronica Cuellar argues that this court can rule as a matter of law on her motion for partial summary judgment that Miguel Cuellar was not a statutory employee of Xpress.  If Miguel Cuellar was an Xpress statutory employee, there's no recovery under the MCS-90 endorsement.  Not being a statutory employee of the insured is a necessary condition for recovery under the endorsement. Veronica Cuellar argues that this issue can be decided based on undisputed facts in the present record.  The facts she relies on, which are undisputed based on the parties' complaints, answers, and briefs, appear to be the following:

- (1) Progressive issued an insurance policy to Xpress Logistics, LLC, which included an MCS-90 endorsement;

- (2) Xpress is a federal motor carrier;

- (3) Xpress agreed to be the carrier for the load in question;

- (4) Xpress asked Fabian Santiago's mother, Esmeralda Santiago, doing business as ESD Transport, to haul the load instead;

- (5) Fabian Santiago, an employee of ESD Transport, at some point asked his friend, Miguel Cuellar, to drive during the trip; and

- (6) an accident occurred while Miguel Cuellar was driving, resulting in both his and Fabian Santiago's death.

(Docket Entry No. 16 at 3-4; Docket Entry No. 20 at 2, 7).  Still-to-be-discovered facts include whether Miguel Cuellar was paid by Fabian Santiago, or ESD Transport; the relationships between

Fabian Santiago, ESD Transport, and Xpress; and the circumstances leading to the accident. Although Veronica Cuellar attaches exhibits to her motion for partial summary judgment—that she asserts resolves these disputed facts—those exhibits are from the underlying state litigation, which is still in the discovery stage.  Progressive has submitted a declaration stating that it has not had an opportunity to discover facts that will be important in resolving disputed or uncertain, relevant facts to this action.  (Docket Entry No. 20-1).

Progressive argues that whether Miguel Cuellar was paid or employed by Fabian Santiago, ESD Transport, or Xpress, or whether he was to be compensated in some other way for helping Fabian Santiago drive the truck from Texas to Missouri, Miguel Cuellar was operating a commercial motor vehicle in interstate commerce when he died, making him a statutory employee of Xpress under the Motor Carrier Act.  Progressive argues in the alternative that factual disputes preclude granting Veronica Cuellar's motion for partial summary judgment at this stage, and that a continuance for discovery under Rule 56(d) is appropriate.

The policy that Progressive issued to Xpress included an MCS-90 endorsement, required under the federal Motor Carrier Act.  That endorsement is mandated in policies issued to a registered motor carrier, such as Xpress.  The endorsement is intended to protect the public by requiring registered interstate motor carriers to file with the Department of Transportation proof of insurance "sufficient to pay . . . for each final judgment against the registrant for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles, or for loss or damage to property."  49 U.S.C. § 13906(a)(1).

To ensure that motor carriers have the minimum levels of financial responsibility required, the Motor Carrier Act and its accompanying regulations provide that obtaining an MCS-90 endorsement in a policy is one of the ways that a motor carrier can submit proof of the required

financial responsibility.  49 C.F.R. § 387.7(d).  This endorsement requires the insurer to pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation … or use of motor vehicles . . . regardless of whether [it] is specifically described in the policy."  *See*  49  C.F.R.  §  387.15  (directing  to https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/2021-06/FMCSA%20Form%20MCS-90%2006032021_508.pdf).  The endorsement then allows the insurer to seek reimbursement from the insured.  *Id.*

"The endorsement creates a suretyship, which obligates an insurer to pay certain judgments against the insured arising from interstate commerce activities, even though the insurance contract would have otherwise excluded coverage."  *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 247 (5th Cir. 2010) (citing *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 470 (5th Cir. 2005)).  The endorsement does not protect the insured, but the public, by filling an insurance gap; it guarantees a source of recovery when a registered motor carrier negligently injures a member of the public and coverage does not otherwise apply.

The MCS-90 endorsement states in part:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.  *Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment,* or property transported by the insured, designated as cargo.  It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation

thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.  However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company.  The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

*See* 49 C.F.R. § 387.15 (directing to https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/2021-06/FMCSA%20Form%20MCS-90%2006032021_508.pdf) (emphasis added).

The MCS-90 endorsement does not apply to injury or death of an "insured's employee." The question is whether Miguel Cuellar was an "employee" of Xpress under the Motor Carrier Act when he took the truck wheel from Fabian Santiago.

The Motor Carrier Act, 49 U.S.C. § 31132(2), defines an "employee" to mean:

[A]n operator of a commercial motor vehicle (including an independent contractor when operating a commercial motor vehicle), . . . or an individual not an employer, who . . . directly affects commercial motor vehicle safety in the course of employment . . . .

The regulation defines "employee" as:

. . . any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), . . .

49 C.F.R. § 390.5.

The MCS-90 endorsement excludes coverage of an "insured's employees while engaged in the course of their employment."  An excluded employee under the MCS-90 endorsement is an individual, other than the employer, who is an operator of a commercial motor vehicle (including

an independent contractor), who is engaged in the course of his employment with the insured when the injury occurs.

Progressive's argument that the fact that Miguel Cuellar was driving a truck delivery load that Xpress rebrokered to ESD Transport makes him an employee of Xpress is unpersuasive. The language of the MCS-90 endorsement requires that Miguel Cuellar was engaged in some form of employment with the insured, even if as an independent contractor. But Veronica Cuellar is unpersuasive in arguing that assuming Cuellar was not hired as an employee by ESD Transport or Xpress, he cannot be a statutory employee for the purpose of the MCS-90 endorsement.

*Ooida Risk Retention Grp., Inc. v. Williams* presents some similar facts and questions. 579 F.3d 469 (5th Cir. 2009). In *Ooida*, Tony Moses was the sole proprietor of Slim Shady Express, a commercial motor carrier. *Id.* at 471. Ooida had issued a standard motor carrier policy to Slim Shady Express. *Id*. Moses asked Derrick Shamoyne Williams for help on long-haul jobs and paid him for that help, but Slim Shady Express did not directly employ Williams. *Id.* at 474. Moses was in the rig's sleeper berth when Williams lost control of a rig on a job for Slim Shady Express, and Moses died. *Id.* at 471. The Fifth Circuit held that because Moses asked Williams to help him and paid for that help, Williams was an independent contractor, and therefore a statutory employee under the Motor Carrier Act and its regulations. *Id.* at 474.

As in *Ooida*, if Miguel Cuellar was provided with value in exchange for his service of helping drive with Fabian Santiago, then Cuellar may be considered an employee of ESD Transport, which took the job on a rebrokered contract from Xpress. *See Consumers Cty. Mut. Ins. Co v. PW & Sons Trucking Inc.*, 307 F.3d 362, 365–67 (5th Cir. 2002) (an independent contractor could not seek coverage for injuries because he was a "statutory employee" under § 390.5, which eliminates the distinction between an independent contractor and an employee);

*Price v. Westmoreland*, 727 F.2d 494, 497 (5th Cir. 1984) (the insurer was vicariously liable for damages caused by the negligence of the insured's statutory employee that injured his passenger, despite the fact that the employee did not have the authority to take a passenger, because the passenger was not furthering the economic interest of the carrier).

Under Rule 56(d) of the Federal Rules of Civil Procedure, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  This case is at an early stage.  Formal discovery has not begun.  Progressive has submitted a declaration that it has had no opportunity to: subpoena text messages between Miguel Cuellar and Fabian Santiago or others; discover relevant facts about the circumstances of the trip; take depositions of ESD Transport and Xpress representatives; learn more about whether Miguel Cuellar was compensated in any way; or learn whether anyone but Fabian Santiago knew that Miguel Cuellar was along on the trip or whether Fabian Santiago's knowledge is imputed to Esmeralda Santiago, ESD Transport, or Xpress.  (Docket Entry No. 20-1).

Veronica Cuellar's motion for partial summary judgment on the key issue in the coverage dispute is premature.  The court denies the motion, without prejudice to having it reurged, if appropriate, after discovery.  The court grants Progressive's Rule 56(d) request to defer decision on the issue raised in the motion until that discovery has occurred.

### B.    Progressive's Motion to Dismiss the Counterclaim

Progressive argues that Veronica Cuellar's counterclaim that Progressive has a duty to settle claims arising from an MCS-90 endorsement obligation does not state a cause of action. Veronica Cuellar responds that because an MCS-90 endorsement permits judgment creditors to

pursue an action directly against the insurer for amounts owed by the insured, and the insurer can then seek reimbursement from the insured, the insurer has a duty to settle within a reasonable policy amount.

Under Texas law, an insurer has a *Stowers* duty, "to exercise ordinary care in the settlement of claims to protect its insureds against judgments in excess of policy limits." *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 843 n.2 (Tex. 1994).   The "duty is not activated by a settlement demand unless: (1) the claim against the insured is within the scope of coverage, (2) there is a demand within policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Am. Guarantee & Liability Ins. Co. v. ACE Am. Ins. Co.*, 990 F.3d 842, 847 (5th Cir. 2021) (citing *Tex. Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 314 (Tex. 1994)). "This well-recognized duty arises from the obligations to defend and indemnify pursuant to the insurance contract and the control the policy grants to the insurer over the insured's defense." *St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999) (citation omitted).

The Fifth Circuit treats the MCS-90 endorsement as a suretyship, rather than an indemnity relationship between an insurer and insured. *See Travelers Indem. Co. of Ill. v. W. Am. Specialized Transp. Servs., Inc.*, 409 F.3d 256, 260 (5th Cir. 2005) ("The prevailing law . . . is that the MCS–90 endorsement imposed a suretyship obligation on [the insurer] to the [public]."). "A suretyship is a three-party relationship where the surety undertakes to perform to an obligee if the principal fails to do so. The surety stands in the shoes of the principal and must complete any obligation due the obligee at the time of default." 74 Am. Jur. 2d Suretyship § 1 (2021 Update).

The MCS-90 endorsement is a "safety net" for the public, and "not an ordinary insurance provision to protect the insured." *Travelers Indem.*, 409 F.3d at 260. The reasons behind a duty to settle in the indemnity-insurance context, in which the insurer has a duty to defend and indemnify the insured, do not apply to the MCS-90 endorsement context, in which the insurer owes only an obligation to pay the remaining debt of an insured after the insured's debt has been established. *See John Deere Ins. Co. v. Truckin' U.S.A.*, 122 F.3d 270, 275 (5th Cir. 1997) (the MCS-90 endorsement did not create a duty to indemnify among the insurers); *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 677 (5th Cir. 2001) (recognizing that the MCS-90 endorsement does not itself create a duty to defend the insured).

Veronica Cuellar's argument that the insurer, Progressive, has a duty to settle under the MCS-90 endorsement is unpersuasive. The MCS-90 endorsement provides:

> The insured agrees to reimburse the [insurer] for any payment made by the [insurer] on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the [insurer] would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.
>
> It is further understood and agreed that, upon failure of the [insurer] to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the [insurer] to compel such payment.

*See* 49 C.F.R. § 387.15 (directing to https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/2021-06/FMCSA%20Form%20MCS-90%2006032021_508.pdf).

Under the MCS-90 endorsement, after a final judgment has issued against the insured, Xpress, a judgment creditor has the right to sue the insurer, Progressive, if Progressive has failed to pay the amount Xpress owes under the judgment. The obligation to satisfy the remaining debt is triggered only after a final judgment. *See also Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322,

327 (7th Cir. 2010) ("Under this suretyship, the insurer is only obliged to pay what the insured actually owes, and then only if that debt arises from a final judgment." (citing *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 881 (10th Cir. 2009)). Because Progressive has a duty to pay the debt of Xpress that remains after a final judgment against Xpress, Progressive does not owe a duty to settle under the MCS-90 endorsement.

The outcome might be different if the insurance contract, by terms other than those in the MCS-90 endorsement, imposed a duty to defend and indemnify on Progressive that encompassed claims brought under the MCS-90 endorsement. *See T.H.E. Ins. Co.*, 242 F.3d at 677 ("[A]lthough the MCS–90 itself does not impose a duty to defend upon the insurer, neither does it negate such a duty that might fall upon the insurer under the Policy as interpreted according to state law."). But that is not what Veronica Cuellar has pleaded in her counterclaim.

The motion to dismiss Veronica Cuellar's counterclaim is granted.

## III.    Conclusion

Veronica Cuellar's motion for partial summary judgment, (Docket Entry No. 16), is denied. Progressive's motion to dismiss Veronica Cuellar's counterclaim, (Docket Entry No. 17), is granted.

SIGNED on January 11, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

13