IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PROGRESSIVE COMMERCIAL CASUALTY INSURANCE COMPANY, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-21-2683 |
| XPRESS TRANSPORT LOGISTICS, LLC d/b/a XT LOGISTICS, XPRESS TRANSPORT LOGISTICS, VERONICA CUELLAR, individually and as personal representative of the ESTATE OF MIGUEL ANGEL PEREZ CUELLAR, deceased, ESTATE OF FABIAN ALANIZ-SANTIAGO, deceased, and ESMERALDA SANTIAGO, | § § § § § § § § § § § | |
| Defendants. | § § | |

**MEMORANDUM AND OPINION**

Two young men, Fabian Alaniz-Santiago and Miguel Cuellar, died in a one-vehicle truck accident in Pettis County, Missouri. Miguel's mother, Veronica Cuellar, brought suit in state court against Xpress and others. The pending state-court litigation should resolve issues of liability and damages. This federal court declaratory judgment action seeks to resolve insurance coverage issues.

ESD Transport, a company owned by Fabian's mother, Esmeralda Santiago, had rented a box truck from nonparty Penske Leasing and Rental Company. Ms. Santiago asked Fabian to drive the unloaded truck from McAllen, Texas, to Laredo, Texas, pick up a load of steel parts from an Xpress driver, and then drive the loaded truck to Falfurrias, Texas. Originally, Xpress was contracted to drive the load of parts from Laredo to Sedalia, Missouri. Xpress rebrokered the load to ESD Transport when Xpress's driver, Kevin Johnson, fell ill in Laredo after picking up the load at its origin in his own truck. Fabian was to meet ESD Transport's driver, Roberto Rodriguez, in

Falfurrias. It was Rodriguez whom Ms. Santiago intended to drive the rented truck from Falfurrias to the load's destination in Missouri. But Fabian did not drive to Falfurrias. Instead, he and Miguel ended up driving the loaded truck from Laredo, Texas to Sedalia, Missouri. At the time of the accident, Miguel was driving the loaded box truck with Fabian as a passenger.

Progressive Commercial Casualty Insurance Company brings this suit under a commercial automobile insurance policy it issued to Xpress. Among other things, Progressive seeks a declaration that the MCS-90 endorsement to the policy does not cover the bodily injury and death claims that are the subject of the underlying state-court action. (Docket Entry No. 13 at 9). Miguel's mother, Veronica Cuellar, previously brought a motion for summary judgment, seeking a declaration that her son was not a statutory employee of Xpress or an employee of ESD Transport at the time of the accident. (Docket Entry No. 16). The court denied that motion without prejudice to refile, agreeing with Progressive's argument that it should be allowed to take discovery before resolving the motion. (Docket Entry No. 31 at 10). Discovery has now closed. (Docket Entry No. 30 at 2).

In this opinion, the court resolves Ms. Cuellar's renewed motion for partial summary judgment and a similar motion brought by Ms. Santiago. (Docket Entry Nos. 34, 36). Each defendant seeks a ruling that her child was not a statutory employee of Xpress or of nonparty ESD Transport at the time of the accident. Ms. Santiago also explicitly seeks a ruling that the MCS-90 endorsement to the Xpress policy applies with respect to her son's injuries and death. (Docket Entry No. 36 at 5). Progressive has responded, and the defendants have replied. (Docket Entry Nos. 37–40). The court grants Ms. Cuellar's motion, and grant in part Ms. Santiago's motion.

The court also resolves a motion for entry of default and for default judgment brought by Progressive against Xpress. (Docket Entry No. 35). Progressive has satisfied the requirements for

entry of default against Xpress but has not satisfied the requirements for a default judgment with respect to the applicability of the MCS-90 endorsement. The motion is granted in part.

The reasons for these rulings are set out below.

## I. The Legal Standards

### A. Motion for Summary Judgment

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court

must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### B.     Motion for Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).

When the relief sought is declaratory, the entry of a default judgment must be made by application to the court. *See* FED. R. CIV. P. 55(b)(2). For the court to enter default judgment, the complaint must satisfy Federal Rule of Civil Procedure 8. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497–98 (5th Cir. 2015). "A default judgment is unassailable on the merits but only so far as it is supported by the well-pleaded allegations, assumed to be true." *Id.* at 496 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206.

II.  Analysis

    A.  The Motions for Summary Judgment

        1.  The MCS-90 Endorsement

The policy that Progressive issued to Xpress included the MCS-90 endorsement required under the Federal Motor Carrier Act for policies issued to a registered motor carrier, such as Xpress. The endorsement is intended to protect the public by requiring registered interstate motor carriers to file with the Department of Transportation proof of insurance "sufficient to pay . . . for each final judgment against the registrant for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles, or for loss or damage to property." 49 U.S.C. § 13906(a)(1).

To ensure that motor carriers have the minimum amount of insurance required, the Motor Carrier Act and its accompanying regulations provide that obtaining an MCS-90 endorsement in a policy is one of the ways that a motor carrier can submit proof of the required financial responsibility. 49 C.F.R. § 387.7(d). The endorsement requires the insurer to pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation . . . or use of motor vehicles . . . regardless of whether [it] is specifically described in the policy." U.S. Dep't of Transportation, Form MCS-90, at 2 (June 3, 2021)[1]; *see also* 49 C.F.R. § 387.15. The endorsement then allows the insurer to seek reimbursement from the insured. *Id.*

"The [MCS-90] endorsement creates a suretyship, which obligates an insurer to pay certain judgments against the insured arising from interstate commerce activities, even though the insurance contract would have otherwise excluded coverage." *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 247 (5th Cir. 2010) (citing *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 470 (5th

---

[1] *Available at* https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/2021-06/FMCSA%20Form%20MCS-90%2006032021_508.pdf.

5

Cir. 2005)). The endorsement does not protect the insured, but the public: by filling an insurance gap; it guarantees a source of recovery when a registered motor carrier negligently injures a member of the public and coverage does not otherwise apply.

> The MCS-90 endorsement states, in relevant part:
>
> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. *Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment*, or property transported by the insured, designated as cargo.

*See* Form MCS-90, at 2 (emphasis added).

The MCS-90 endorsement does not apply to the injury or death of an "insured's employee."

The Motor Carrier Act, 49 U.S.C. § 31132(2), defines an "employee" to mean:

> [A]n operator of a commercial motor vehicle (including an independent contractor when operating a commercial motor vehicle), . . . or an individual not an employer, who . . . directly affects commercial motor vehicle safety in the course of employment . . . .

The regulation defines an "employee" as:

> any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle) . . . .

49 C.F.R. § 390.5.

The MCS-90 endorsement excludes coverage of an "insured's employees while engaged in the course of their employment." An "employee" under the MCS-90 endorsement is an individual, other than the employer, who is an operator of a commercial motor vehicle (including

6

an independent contractor) and is engaged in the course of his employment with the insured when the injury occurs. This broad definition of "employee" means that individuals who might otherwise not meet the traditional definition of "employee," such as independent contractors, are considered "statutory employees" for purposes of the MCS-90 endorsement. *See Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 474 (5th Cir. 2009).

### B.     Veronica Cuellar's Motion

Ms. Cuellar points to the deposition testimony of Ms. Santiago, taken in the underlying suit, to show that Miguel was not a statutory employee of Xpress or of ESD Transport at the time of the accident. Ms. Santiago testified that she had no knowledge that Miguel was in the truck until her husband called Fabian to ask about the status of the load. (Docket Entry 34-1 at 35:24–36:18). Ms. Santiago testified that Fabian never told her Miguel would be driving the truck. (*Id.* at 59:5–7). Ms. Santiago testified that she had no agreement to pay Miguel, that Miguel was not an employee of ESD Transport, (*id.* at 41:4–20), and that she had never asked Miguel to assist ESD Transport in any way. (*Id.* at 66:4–10, 70:25–71:2). She testified she had no paperwork related to Miguel. (*Id.* at 44:16–21). Ms. Santiago testified that she never gave Miguel permission, much less asked him, to drive the truck. (*Id.* at 61:11–13).

Progressive does not attempt to rebut Ms. Santiago's testimony. Progressive argues that the testimony may "establish[] only that Miguel Cuellar was not an actual employee or independent contractor of ESD Transport at the time of the accident." (Docket Entry No. 37 at 4). Progressive argues that "[Ms.] Cuellar's summary judgment evidence fails to address the possibility that Miguel Cuellar was receiving some form of compensation from Xpress, Fabian Santiago, or someone else, to help drive the load to Sedalia, Missouri." (*Id.*). Progressive also argues that Esmeralda Santiago "lacked personal knowledge as to whether Miguel Cuellar was

7

provided with value in exchange for helping Fabian Santiago drive the load to Sedalia, Missouri." (*Id*).

Progressive acknowledges that Veronica Cuellar has submitted evidence that her son, Miguel Cuellar, was not an employee or independent contractor of ESD Transport when the truck crashed. While Progressive hints that there may have been a value-for-services arrangement between Miguel Cuellar and Xpress, which rebrokered the load to ESD Transport, Xpress's answers to interrogatories in the underlying suit state unequivocally that Xpress had no knowledge of Miguel Cuellar's presence in the truck at the time of the accident; that Xpress did not agree to pay Miguel Cuellar in any way; and that Xpress did not pay Miguel Cuellar in any way. (Docket Entry No. 16-5 at 4 ("[Xpress] did not employ either Mr. Cuellar or Mr. Alaniz and did not know they were involved in transporting the cargo.")).

Veronica Cuellar has submitted evidence that Miguel Cuellar was not a statutory employee of Xpress or ESD Transport. The burden shifts to Progressive to point to summary judgment evidence giving rise to a factual dispute material to determining whether Miguel Cuellar was a statutory employee of Xpress or of ESD Transport when the accident occurred. Progressive has not done so.

C. **Esmeralda Santiago's Motion**

Ms. Santiago moves for a ruling that her son was not a statutory employee of Xpress or ESD Transport at the time of the accident, relying on her own deposition testimony in the underlying state-court action.

Ms. Santiago testified in the state-court suit that she wanted Roberto Rodriguez to drive the loaded truck from Falfurrias, Texas to Sedalia, Missouri. Ms. Santiago used Rodriguez regularly to haul loads, paying him by the mile. (Docket Entry No. 36-1 at 28:3–21). Rodriguez

8

was unable to pick up the load in Laredo because he was busy. (*Id.* at 34:12–20). Ms. Santiago called her son, Fabian, to "do [her] the favor of picking up that load" in Laredo and driving it to Falfurrias. (*Id.* at 34:21–35:19). Ms. Santiago testified that she had no agreement to pay Fabian for the "favor," and that Fabian was not an employee of ESD Transport and not an independent contractor. (*Id.* at 41:4–20, 54:20–23). Fabian had not previously done a similar "favor" for ESD Transport, (*id.* at 55:11–13), although he had delivered—without pay—small boxes locally in a van for the company. (*Id.* at 66:11–19).

In Laredo, Fabian met with Xpress's driver, Kevin Johnson, who had the load. (*Id.* at 37:15–38:15). Johnson, Fabian, and Miguel transferred the load from Johnson's truck to the truck rented by ESD Transport. (Docket Entry No. 39-1 at 62:1–16). From Laredo, Fabian was asked by his mother to drive the loaded truck to Falfurrias, a distance of approximately 90 miles, to meet Rodriguez, who was to drive the loaded truck to Missouri. (Docket Entry No. 36-1 at 35:7–19). After Fabian picked up the load from Johnson in Laredo, he informed his mother that Johnson "had offered him a job." (*Id.* at 39:18–19). Fabian did not provide Ms. Santiago with specifics. Ms. Santiago testified she did not know whether Johnson had "told [Fabian] to drive [the load] to Missouri," but only that "Johnson had offered him a job." (*Id.* at 39:24–40:3). Ms. Santiago testified that she had no knowledge of any agreement between Fabian and Johnson about driving the truck from Laredo to Missouri. (*Id.* at 71:13–16). Once she learned that Fabian did not intend to meet Rodriguez in Falfurrias to have Rodriguez drive the truck to Missouri, she asked Fabian to return; he did not. (*Id.* at 59:16–60:6). When that conversation took place, Fabian was apparently on Interstate 35, (*id.* at 35:16–19), although the precise location is unclear.

Ms. Santiago's testimony shows that Fabian was not a statutory employee of ESD Transport. Progressive focuses on whether Fabian was a statutory employee of Xpress, and points

9

to the evidence of Fabian's interactions with Johnson, and Ms. Santiago's testimony that Johnson offered her son a job, (Docket Entry No. 39 at 6–7); however, Johnson's testimony provides no evidence that any communication between Johnson and Fabian involved an explicit offer or suggestion of employment, including an offer for a single-trip, one-way cargo delivery.

Johnson testified that he picked up the load, with his own truck, in Laredo for Xpress on the morning of the accident. He felt ill and realized that he would be unable to drive on to Missouri. (Docket Entry No. 39-1 at 54:6–17). He let the Xpress dispatcher know about his illness. (*Id.*). Johnson testified that he assumed that the dispatcher had "to try to see who would come recover the freight, which ended up being them two boys." (*Id.* at 54:8–12). Johnson, Fabian, and Miguel transferred the load to ESD Transport's rented truck. (*Id.* at 62:1–16). He testified that his conversation with "the boys" (whose names he did not appear to remember) was limited to a "meet and greet," (*id.* at 64:4), and that Fabian and Miguel had told him something to the effect of "we're going to run this right here and we're gonna go back home and chill for a little bit." (*Id.* at 63:21–24). Johnson's testimony indicates that he understood that Xpress or another entity would arrange the transportation of the load by truck from Laredo to Missouri, and that a representative of Xpress or the other entity would tell the drivers the details of the trip. (*Id.* at 71:8–25). Johnson testified that Xpress did not pay him for the load, because he did not take it anywhere. (*Id.* at 66:20–67:10). Johnson did not testify that he offered Fabian a job or any value in return for taking the load from Laredo to Missouri, or to any other destination.

Fabian may have told his mother that Johnson had offered him a job. But nothing Progressive points to in the record suggests that Johnson, Xpress, or ESD Transport offered Fabian employment, work, or compensation for driving the loaded truck from Texas to Missouri. In the

10

absence of such evidence, there is no factual basis to support an inference that Fabian was a statutory employee of Xpress or of ESD Transport at the time of the accident.

   **D.  The Applicability of the MCS-90 Endorsement**

   Progressive argues that its obligations under the MCS-90 endorsement apply only if and when a judgment is entered in the underlying wrongful death litigation against its insured, Xpress. Because the underlying litigation has not concluded, no judgment has yet been entered. (Docket Entry No. 37 at 5; Docket Entry No. 39 at 3–4). Progressive also argues that, if neither Fabian nor Miguel is a statutory employee, "the vehicle [that crashed] was not being operated for compensation." (Docket Entry No. 37 at 6; Docket Entry No. 39 at 8–9). If the vehicle was not being operated for compensation, Progressive contends, then it was not "subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980," making the MCS-90 endorsement inapplicable.

   The question is whether the MCS-90 endorsement in the Progressive policy issued to Xpress covers any resulting judgment in the pending state court action for the deaths of these two young men. Progressive did not wait until after the liability determination in the state-court action to bring this federal coverage declaratory judgment suit. Progressive has not moved this federal court for a stay of the coverage issues pending resolution of the underlying suit liability issues. Progressive has instead moved for a default judgment against Xpress. (Docket Entry No. 35). If the policy Progressive issued to Xpress does not apply to the accident at issue—the declaratory judgment that Progressive seeks against Xpress—then the MCS-90 endorsement in the policy Progressive issued to Xpress may obligate Progressive to pay the claims for Fabian's and Miguel's deaths. The MCS-90 endorsement distinguishes this case from many other coverage actions because the endorsement is triggered only if certain policy exclusions apply. Whether those

exclusions apply often turns on the resolution of liability issues in the underlying case. The MCS-90 endorsement imposes a duty to indemnify, which "is determined by all the facts and circumstances that result in the insured's potential liability" in the underlying lawsuit. *Ooida*, 579 F.3d at 477 (citing *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997)). It would be premature, at this point, to resolve Progressive's indemnification obligations to the movants under the MCS-90 endorsement because the underlying litigation is still pending.

Progressive's second argument creates a factual dispute material to determining whether the truck was operated subject to the requirements of the Motor Vehicle Act at the time of the accident. The court rejects Progressive's characterization of the issue, which would incorrectly make the phrase "motor carrier" synonymous with the word "driver" and the word "operate" synonymous with the word "drive." The MCS-90 endorsement to the Progressive policy gives the "Motor Carrier name" as "Xpress Transport Logistics LLC." (Docket Entry No. 13-2). The regulation Progressive quotes in part makes clear that "motor carrier" need not mean "driver." 49 C.F.R. § 387.5 ("The term [motor carrier] includes, but is not limited to, a motor carrier's agent, officer, or representative; [or] an employee responsible for hiring, supervising, training, assigning, or dispatching a driver . . . ."). For the purpose of the MCS-90 endorsement, "[i]nsured . . . means the motor carrier named in the policy of insurance," among others. *Id.* Xpress is a motor carrier named in the Progressive insurance policy.

The relationship between Xpress and ESD Transport is the subject of a pending summary judgment motion in the underlying action. *See* Pl.'s Mot. for Partial Summ. J. against Xpress Transport Logistics, LLC ¶ 13, *Cuellar v. Santiago*, No. C-0540-21-F (332nd Dist. Ct., Hidalgo County, Texas Aug. 12, 2022). The applicability of the MCS-90 endorsement may turn on the relationships among Xpress, the insured, and ESD Transport. Until that relationship is established,

the court cannot rule that the MCS-90 endorsement does, or does not, apply. Esmerelda Santiago's motions for summary judgment on the applicability of the MCS-90 endorsement is denied.

**III.     The Motion for Default Judgment**

Progressive's amended complaint alleges that Progressive is entitled to a declaratory judgment stating that it has no duty to defend or indemnify Xpress, the named insured under the policy, in the underlying state-court litigation, and that the MCS-90 endorsement does not apply. (Docket Entry No. 13 at 9). The amended complaint satisfies the requirements of Federal Rule of Civil Procedure 8. Progressive seeks entry of default against Xpress and default judgment on all the relief sought in its amended complaint. (Docket Entry No. 35). Xpress has not pleaded or otherwise defended itself in this action, making entry of default appropriate. FED. R. CIV. P. 55(a).

Progressive alleges that the accident that is the subject of the underlying litigation involved a Hino 268 truck registered to Penske Leasing and Rental Company. (Docket Entry No. 13 ¶ 3.1). The Progressive policy covers bodily injury or wrongful death claims involving only "insured auto[s]" identified on the policy's declarations page. (*Id.* ¶ 3.3). The only auto listed on the policy's declarations page is a "2015 Frht 16M." (Docket Entry No. 13-2 at 3).

Progressive filed its amended complaint on October 28, 2021. (Docket Entry No. 13). Progressive provided the amended complaint to Xpress's counsel and a request for waiver of service on January 5, 2022. (Docket Entry No. 35-2 at 2). Xpress executed the waiver on January 6, 2022. (Docket Entry No. 28). Xpress's counsel stated that he was "working on obtaining TX counsel for [Xpress]," (Docket Entry No. 35-2 at 1), but Xpress did not answer the amended complaint by the March 7, 2022, deadline or thereafter. (Docket Entry No. 28, minute entry). Progressive's motion for default is supported by an affidavit stating that Xpress is a limited liability company not exempt from a default judgment. (Docket Entry No. 35-4 ¶ 9).

Progressive has established that it is entitled to a default judgment against Xpress with respect to the duty to defend and duty to indemnify.  Normally, the resolution of the duty to defend is subject to the eight-corners rule, meaning that it "is determined by the [underlying] plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations."  *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).  "Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage."  *Id.*  In the underlying amended petition attached to the amended complaint, no mention is made of the truck model or ownership.  (Docket Entry No. 13-1).  But the Texas Supreme Court has explicitly recognized an exception to the eight-corners rule:

> Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

*Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.,* 640 S.W.3d 195, 202 (Tex. 2022).  The exception applies here.  The underlying litigation turns on the negligence of Xpress and others.  The identification of the truck does not contradict facts alleged in the underlying pleadings and establishes Progressive's coverage obligations.  The court grants Progressive's motion for default judgment will enter the requested declaratory judgment that Progressive has no duty to defend or indemnify Xpress in the underlying litigation.

Progressive is not, however, entitled to a default judgment that the MCS-90 endorsement does not apply with respect to Miguel and Fabian's deaths.  A "party is not entitled to a default judgment as a matter of right, even when the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir.1996).  With respect to default judgments, the Fifth Circuit has ruled that it would result in unfairness "to allow some defendants to prevail, while not providing the

14

same benefit to similarly situated defendants." *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001). The Supreme Court has ruled that a default judgment should not be entered in cases of joint and several liability when entry of default is proper against one defendant but other defendants have appeared. *Frow v. De la Vega*, 82 U.S. (15 Wall.) 552 (1872). *Frow* remains good law, and many district courts in this circuit have extended its reasoning to cases in which the defendants have jointly related defenses. *See, e.g.*, *Harris Cnty. Water Control v. Phila. Indem. Ins. Co.*, No. 19-cv-1755, 2019 WL 5191129, at *2 (S.D. Tex. Oct. 15, 2019) (collecting cases); *Underwriters at Lloyds, Syndicate 4242 v. Turtle Creek P'ship, Ltd.*, No. 8-cv-3044, 2010 WL 5583118, at *3 (S.D. Tex. Feb. 26, 2010) (permitting issues litigated and decided with respect to answering defendants to inure to the benefit of defaulting defendant); *see also* 10A CHARLES A. WRIGHT *et al.*, FEDERAL PRACTICE AND PROCEDURE CIV. § 2690 (4th ed.) ("Although the rule developed in the *Frow* case applies when the liability is joint and several, it probably can be extended to situations in which joint liability is not at issue but several defendants have closely related defense." (collecting cases)).

While the MCS-90 endorsement is intended to benefit third parties in the absence of coverage for the insured, meaning that the benefit to Xpress from a favorable decision for the other defendants may be minimal, entry of a default judgment with respect to the MCS-90 endorsement against Progressive may eventually result in inconsistent judgments and prejudice the rights afforded to Ms. Santiago and Ms. Cuellar under the endorsement. *See Calsep, Inc. v. Intelligent Petroleum Software Sols.*, LLC, No. 19-cv-1118, 2020 WL 7249831, at *5 (S.D. Tex. Nov. 18, 2020), *report and recommendation adopted*, 2020 WL 7247781 (S.D. Tex. Dec. 8, 2020) (declining to enter default judgment against defaulting defendant when judgment would potentially harm the non-defaulting defendants).

On the present record, the court denies the motion for default judgment with respect to the MCS-90 endorsement.

**IV.     Conclusion**

The court grants Veronica Cuellar's motion, (Docket Entry No. 34), for partial summary judgment.

The court grants in part Esmeralda Santiago's motion, (Docket Entry No. 36), for partial summary judgment. The court grants the motion insofar as it seeks a ruling that Fabian Santiago was not a statutory employee of Xpress or of ESD Transport. The court otherwise denies the motion.

The court grants in part Progressive's motion, (Docket Entry No. 35), for default and for default judgment. The court will enter an order directing the entry of default against Xpress and issuing a declaration that Progressive does not owe Xpress a duty to defend or indemnify under the policy terms. The court otherwise denies the motion.

SIGNED on October 11, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge